Our next case this morning is case number 4-1-1-0-8-6-5. For the appellant we have Stanley Tucker for the appellee, Kent Schnack, and James Hanson. Are we going to have two arguing over here or just one? Just my stuff and James Hanson. Okay, very well. Mr. Tucker. Thank you, Your Honor. Good morning. Court, please. Counsel. I want to go right to the LS case and discuss it briefly with you. It's a 2009 case by the Supreme Court that lays out the elements of this tort of intentional interference with expectancy. It provides that the first element is, of course, the existence of an expectancy, intentional interference with that expectancy, tortious conduct such as fraud, duress, or undue influence, a reasonable certainty that the expectancy would have been realized, and damages. It is important to note that there is nothing in the LS case about negating any affirmative defenses or negating anything. It just sets out those simple elements. We get into the main thrust of the defendant's claims, which is their claim of what we call adequate relief. The adequate relief doctrine, I believe, developed first in Hoover. And that is, I believe, the main case on which the defendants are relying for the application of the adequate relief doctrine. Hoover doesn't apply for multiple reasons. The first is, it hasn't been extended by the court to apply to our situation. The second is, the Hoover case is what I would call a clean case. It involved a will, a will contest, a claim for tortious interference, and a situation where all of the assets were in above probate. There was no trust. There were no inter vivos transfers. So Hoover really isn't authority or controlling in our case. We rely on two lines of cases. The first are Nolson and Resselier, in which there were multiple wills involved. And the courts there said, well, the will contest relief is now speculative, because in order to ultimately recover, plaintiff has to win on more than one will contest. And so we're going to allow the tort to proceed. The other case is Jouzarski, which is, well, it actually is Jouzarski and Ellis, a Supreme Court case. Jouzarski involved inter vivos transfers outside the estate and held, essentially, we believe that this alone is enough to preclude adequate relief. Of course, Ellis also involved inter vivos transfers outside the state, as I recall, some rather substantial transfers to a fellow who had a power of attorney. It did not involve a trust. And so based on those cases, we argue that Hoover not only is not controlling, but doesn't even apply. In this Wade case, there are trust assets outside the estate. In this Wade case, there are also assets outside the trust that have been transferred by inter vivos transfer. And they are alleged in the 11A paragraphs of our count three with respect to all of the defendants. For those reasons, it's our intention that the adequate relief doctrine is not a problem for the plaintiff in this case. There's a great discussion of our allegation. I think it's in paragraph 10 of the will contest, trust contest, and the count three tort case. We say something to the effect of that the 96 will should be admitted to probate. Some of the defendants have made the claim that that's an admission that it will be admitted to probate. And so if we win the will contest, then the adequate relief doctrine should apply. But the problem is not whether or not the 96 will will be admitted. The problem is what is going to be in the estate if it is. And so under the cases we cite, we believe that that claim is speculative. In addition, we believe there's an issue under the revival statute on which it is possible. Was your client even left anything in the 96 will? I'm sorry? Was your client left anything as a beneficiary in the 96 will and trust? My client was left everything if there is anything, if there were to be anything in the estate. Yeah. Essentially. The will is kind of... Was it a pour over will? The 96 will didn't pour over into the trust? That is correct. You're saying that in terms of the trust, your client took everything? Well, no. The assets go into a foundation. But my client has significant benefits in the foundation and under the will, including income and the right to be employed with a business and other benefits under the trust. But, of course, that's not the point here. If the will contest is successful and the trust contest is not, there will be nothing when we probate, if we can, the 96 will. If the will contest is successful and there's no tort claim against the intervangos transfers, they will not be in that estate in the event the 96 will is probated. You're kind of losing me here. I'm trying to figure out how you can establish an expectancy unless you necessarily rely upon admission of the 96 will and trust. Otherwise, what would the expectancy be and how was it diminished? Well, first of all, if for some reason the 96 will and trust would not be admitted to probate, if in fact this revival problem that we see were to be a problem, then if the will we are contesting were successfully contested, my client is the only heir. She would inherit everything if the will contest were successful, except there's nothing to inherit because it's all in the trust. Does that answer your question? Or do you have another question? My question would be if you start out with an expectancy and that expectancy is maybe a gift, a job, an income from a trust, that's what your father was going to give you, that sounds like, to me, the expectancy that you're talking about in the future. And then in between, all sorts of things could happen that might alter that, but when you're complaining about someone interfering with your expectancy, there has to be an expectancy to be interfered with. I mean, there's got to be a baseline. And it seems to us, or it seems to me, not us, I don't speak for my colleague, it seems to me that the expectancy then would be this will that I like, that I want admitted to probate. I don't disagree with you, Your Honor. I agree to a point. When you talk of it as a baseline, that's an argument that the defendants have made. It's a baseline, of course, if the assets are there when it's probated. In the probated state, there's virtually nothing in this case. Virtually all of the assets have been transferred to the trust. So we win the will contest. It is also a pour-over will to the trust. And we get the 96-will admitted. The issue is not what the 96-will says. Obviously, my client had an expectancy to be the only heir of her father if he didn't have a will. He did have a will in 96. And essentially, the only person he benefited in that will was my client, his only daughter. And it is a little complicated, but part of the assets go to the trust. But she has rights which are very significant from an economic standpoint under the will and under the trust that's established in the 96-will. So the baseline is not what it says. The baseline is not what the 96-will says. It's what's going to be there if we are successful on the will contest. And the answer is the will contest is not adequate relief because the answer to what's going to be there, the baseline is nothing because everything's in the trust and there have been other intervivals just outside the trust which we are attacking in the 11A paragraphs against each defender. There is argument over damages. It is our position that in the Ellis case, the Supreme Court adopted 774A and B of the restatement, and they allowed damages including pecuniary loss, consequential loss, and even emotional distress. I think I've argued the points I wanted to cover. If anyone has any questions, I would be pleased to address them. I don't see any now, but you will have rebuttal. Thank you. Your Honors, Counsel, I'd like to pick up on the defendant's argument I'm arguing for all of the appellees. I think the 96 will is the baseline that has to establish what the tortious interference with the expectancy is to be for Ms. Barr. The claim of tortious interference with expectancy basically says, I had an expectancy to get X, but for your interference with that, I'm not getting X, and instead I may be getting Y. What we are here today on is half a decade into this case, trying to get the appellant to put forth what it is she alleges my client and the weight individuals took from her that she was expecting to get from her father. Well, as they pled in their petition for four times now, her expectancy is the 1996 will and trust, which they allege should be admitted to probate. Now, what they're arguing is basically we don't want that to happen or it might not happen, but for the fact of what we're here for today, a judgment on the pleadings, you take all well-pled facts as true. Well-pled fact is the 1996 will was the testamentary wishes of my father. It will be admitted to probate. That's what I will get. Under that will, she took the following. Household furniture and furnishings, automobiles, and personal effects. What the appellant has failed to put forth in any of the pleadings that have been filed is any allegations against the individual defendants, how any actions from us interfered with her getting household furniture, furnishings, automobiles, and her father's personal effects. They make a big argument about if we prevail on the will contest, my client gets virtually nothing. Well, based on the 1996 will, which she says was her father's testamentary wishes, she was going to get virtually nothing anyway. She got nothing in that will other than what I just mentioned. Well, maybe I didn't articulate it very well, but I thought I asked Mr. Tucker that question, and he said she got everything. Going on what the will says. Plaintiff has appointed the executor. She gets all household furniture and furnishings, automobiles, and personal effects. The residue to the successor trustee under the trust is a poor overtrust. And under that trust, she became the trustee. She had the power to get some medical treatment if necessary, as deemed by a trustee and a physician. She had, upon the death of her and her husband, all remaining estate goes to the Wade Nature Foundation. And she got a salary from Nature House. She got income too, didn't she? Yes. Yes, correct. Now, that has to establish what it is she is claiming. That's my expectancy. You tortiously interfered, and what we've never got in this case is pleadings and well-pled facts, not conclusory allegations of how we interfered with that. There is nothing against my client, my law partner Bill Keller, as to what he did that took something away from Susan Barr, and either he took it himself or somebody else got it. In fact, if you look at the allegations which we put in our brief, they're a copied job of the Second Amendment, which was dismissed, which is alleging things such as she was to get a million dollars, and instead she only got $300,000. Well, that is part of the trust documents which they claim are invalid anyway. That was in one of the amendments to the trust. To the later trust. Later trust. That isn't even an issue. There's allegations that cropland was sold by Courtney Wade in the complaint against Bill Keller. There's allegations that she lost her residence in the state of Illinois. There's allegations she didn't get the affections of her father. Well, plain and simple, that is irrelevant. What we have to look at is what is she saying she was going to get? She's saying she was going to get in 1996 under my dad's valid will, that's what I take. And we have to look at what that instrument says. And what we've never gotten in this case, unfortunately that we're here for today, five years after it was initially fired, was what did any of these individual defendants do to tortiously interfere with your expectancy? I think plaintiff also argues that it's premature for us to decide whether there's an adequate remedy, because if the 96 will and trust are not admitted to probate, the laws of intestacy might apply, which means that she would have gotten everything. So what do you think about this argument that it's premature? That's where we differ on the Nolson case and the Rossler case. For the purposes of what we're here for today, which is a 2-6-15, 2-6-19 moment, we have to assume the facts as they've pled them, which is that 96 will is the will and it should be admitted to probate. Now, under that theory and what they've pled, what they're asking is to say, yes, we've pled it, but we want you, court, to find that it's incorrect. There could be a chance that it doesn't happen. Well, that's the premise of their whole case, which is the 96 will is the testamentary capacity of the father. The other thing is, on all these transfers and the adequate relief doctrine, I view that as two separate prongs of the argument. One is we have the tortious interference, which has the five elements, and she has to prove the interference and the damages. And then the argument becomes, okay, adequate relief, it kind of ties in. But the adequate relief that she's arguing isn't there. All she was going to get was the automobiles, the household furniture, and the furnishings under the will. And there's been no allegations anywhere that anyone took J.L. Wade's couch that was transferred out, and she isn't going to get that under the 96 will. So our argument is the adequate relief is there. That 90s followed the line of their pleadings. The 96 will gets admitted to probate. They're successful on their attacks of the later documents. What is there in the estate? Well, she gets the automobiles, his personal effects, and the furniture and household furnishings. If you look at the complaint, all I think is A and K. Well, is there a possibility that, I mean, is the will and the trust separate enough that if one's admitted, the other one's going to be? If one's not admitted, neither will be? I believe that. I don't believe that if they prevail, that the will could be admitted and the trust not. Or the reverse. Right. So when we talk about it, the expectancy really is not just under the will. It isn't the trust and the will. The will, they're intertwined in that sense. So to continue to say she's going to get household furnishings, I mean, in her mind, the presumption would be I'm going to get a decent, I'm going to get a good salary, and I'm going to get income, because I think, I have visions that this is a great business. And sometime in the future, my father's vision of what the money would be given to through the foundation would occur. Well, but there's no, if you look at the pleadings that she's pled them, what she is trying to do is bootstrap what would arguably be a case for the estate, not for her, if she's alleging some sort of diminished income. But what we still haven't gotten is what has Keller or the Wades done to affect her expectancy under those documents? Correct. And for the purposes of here, I would also say that it is their judicial admission in their pleading as to what governs their expectancy and her claims of what her father wanted. Now, the trust, very limited. I mean, there may be an income, and she got to be an employee of the business, which is an incorporated business in the state of Illinois with the board of directors, et cetera, that, you know, she did get that. But the only thing she got was, you know, some medical treatment if necessary, and I think where I'm going with that is all these allegations that she's alleging, if you look at what they pertain against my client, is, you know, that an art collection was mismanaged. That my client, through assisting others, basically, if you want to get down to the nuts and bolts of the case against Bill Keller, it's a malpractice case is what they're basically alleging, that he assisted these people. There's nothing in here that says he took, you know, he got a million dollars or anything. You know, she lost the benefit of annual gifts of herself and her husband. Even under the trust, she was not going to get annual gifts in 1996. She lost her Illinois location for her residence and recreation. Well, that was never going to be her expectancy under the 96, or the 96 trust. She continues on that she was deprived of access to her father. I mean, that's just not part of what we're here for. That she lost, you know, the benefit of property. But it doesn't say who, what, where, when, how. So, I think the point of where I'm going with all our argument is, we've been at this now, this is the fourth time they've tried to plead this cause of action. And not once have we ever gotten anywhere with the true interference as to what damages that cause and how it was caused by any conduct of the individual defendants. That the 96 will is what her expectancy was. She has that as the established baseline by her pleadings. That even under the liberal construction, we understand that they're given liberal leave to amend. That they've been at it now for five years and we're on the fourth amendment. The court decided that they had enough bites at the apple and dismissed the case. And we believe that that ruling should be affirmed. Seeing no questions, thank you. Rebuttal, please. In analyzing this case, the first thing that anyone would have to do, whether they read the briefs or not, is read Compton. It's 22 pages, I'm sorry, it's so long. But it sets out all of the tortures done. It sets out all of the damages. 11A and 11B are the damage issues. Now in this case, and I believe we put this in the facts, Judge Mays was set to decide this case. He had approved the complaint once, then he granted a motion to reconsider, then we got into a brouhaha about this adequate relief. And he was on the verge of making that decision when he recused himself and so we went to the next judge that was assigned to the case and the case was quickly dismissed. I believe Judge Legoski had thought that Judge Mays had really kicked the case in the can, but if you study the record, he really hadn't. Now I want to go in detail here through the 96 will because it turns out the court is intensely interested. We have three things in the 96 documents. We have the will, we have a trust, and in the will there's a reference to the Wade Nature Foundation. The problem in this case, and the problem that Susan has, God help us if she would end up as the heir in this case instead of a beneficiary of the 96 trust because the taxes on the $7 million estate are enormous. But what the will says is, I will the residue of my property and the estate to the trustee under the trust agreement. Now here's the key estate planning technique. He says, if the trustee disclaims a portion of said residue, the portion so disclaimed shall pass into a trust I have created, I have executed, creating a charitable foundation, the Wade Nature Foundation. Now the brilliance of that language is you've got an estate where you're facing an enormous tax. You have the option of either letting the property go into the 96 trust, or you can say, no, Wade Nature Foundation, tax deduction, so that you can reduce or eliminate the estate taxes, which would be, I can't remember what they would be at that time, they'd be certainly more than a million, maybe more than several million. But in any event, that technique is there. But the thing that the defendants keep saying, well, she gets the household goods. Well, she doesn't just get the household goods. She could let all of the property go into the 96 trust, and what does she get? Commencing with my death, all of the net income of the trust, all of the net income, plus medical expenses and other benefits. Then if she doesn't let, if the executive doesn't let all of the residue go into the will that the trust refers to, they can kick it to the Nature Foundation, which she controls. And so, when it is said that the 96 will gives her nothing, I don't know what they're reading when they say that. The documents start at C-103. I'm sorry. They start at Appendix 103 and go several pages. The record reference is C-200. What has Bill Keller done? Well, it's really very simple. Just like the lawyer and analyst who had the power of attorney, he has facilitated the intervitals transfer into their trust, if you will. That's the first thing and the major thing that he has done. With respect to the other defendants, the complaint alleges their facilitation as well with respect to the trust agreement, plus additional specific items of property which they obtained prior to death. Intervitals transfers, just like Ellis. Now, the complaint is set up, as I recall, with 11A. Paragraph 11A in each of the tort counts is the specific damages. Paragraph 11B are economic sorts of damages. I did not hear today any suggestion that Ellis does not adopt 774A and B of the restatement, which covers all the damages, including consequential. Thank you very much. Thanks to the three of you. The case is submitted and the court stands in